# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

ARROYO GRANDE COMMUNITY HOSPITAL
345 South Halcyon Road
Arroyo Grande, CA 93420

COAST PLAZA DOCTORS HOSPITAL
13100 Studebaker Road
Norwalk, CA 90650-2531

DAMERON HOSPITAL
525 West Acacia Street
Stockton, CA 95203-2484

EDEN MEDICAL CENTER
20103 Lake Chabot Road
Castro Valley, CA 94546-5341

FF THOMPSON HOSPITAL
350 Parrish Street
Canandaigua, NY 14424-1793

GARNET HEALTH MEDICAL CENTER
(FORMERLY ORANGE MC / ARDEN HILL
HOSPITAL)
707 East Main Street
Middletown, NY 10940

GEISINGER COMMUNITY MEDICAL CENTER
1800 Mulberry Street
Scranton, PA 18510

GOOD SAMARITAN HOSPITAL
255 Lafayette Avenue
Suffern, NY 10901-4869

HOSPITAL FOR JOINT DISEASES
1 Park Avenue, 11th Floor
New York, NY 10016

Case No. 1:26-cv-2078

**COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY RELIEF UNDER THE MEDICARE ACT AND ADMINISTRATIVE PROCEDURES ACT**

HUDSON VALLEY HOSPITAL
1980 Crompond Rd.
Cortlandt Manor, NY 10567

JPS HEALTH NETWORK
1025 South Jennings
Fort Worth, TX 76104

KUAKINI MEDICAL CENTER
347 North Kuakini Street
Honolulu, HI 96817

LENOX HILL HOSPITAL
972 Brush Hollow Rd.
Westbury, NY 11590

MERCY MEDICAL CENTER
992 North Village Avenue
Rockville Centre, NY 11570

MIDHUDSON RH OF WESTCHESTER MC (SAINT
FRANCIS HOSPITAL)
241 North Road, Sadler Hall
Valhalla, NY 10595

MILFORD REGIONAL MEDICAL CENTER
14 Prospect Street
Milford, MA 01757

NYU HOSPITALS CENTER
1 Park Avenue, 11th Floor
New York, NY 10016

PALOMAR MEDICAL CENTER
15255 Innovation, 2nd Flr
San Diego, CA 92128

PRESBYTERIAN HOSPITAL
2301 Buena Vista Drive SE
Albuquerque, NM 87106-4270

PROVIDENCE HOLY CROSS MEDICAL CENTER
15031 Rinaldi Street
Mission Hills, CA 91345

2

PROVIDENCE SAINT JOSEPH MEDICAL CENTER
- BURBANK
501 S Buena Vista St
Burbank, CA 91505-4809

REYNOLDS MEMORIAL HOSPITAL
800 Wheeling Avenue
Glen Dale, WV 26038

SAINT CHARLES HOSPITAL - NY
992 North Village Avenue
Rockville Centre, NY 11570

SAINT JOSEPH'S HOSPITAL HEALTH CENTER
973 James Street
Syracuse, NY 13203

SAINT JOSEPH'S MEDICAL CENTER - YONKERS
127 South Broadway
Yonkers, NY 10701

SUTTER ROSEVILLE MEDICAL CENTER
9100 Foothills Blvd
Roseville, CA 95747

THE BLOOMSBURG HOSPITAL
549 East Fair Street
Bloomsburg, PA 17815-0340

TUCSON MEDICAL CENTER
5301 E. Grant Road
Tucson, AZ 85712

UNIONTOWN HOSPITAL
500 West Berkeley Street
Uniontown, PA 15401-5596

VALLEY MEDICAL CENTER
400 South 43rd Street
Renton, WA 98055

VASSAR BROTHERS MEDICAL CENTER
1351 Route 55, Suite 200
LaGrangeville, NY 12540-5144

Plaintiffs,

3

v.

ROBERT F. KENNEDY, JR., Secretary,
United States Department of Health and
Human Services
200 Independence Avenue S.W.
Washington, D.C. 20201

        Defendant.

## COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY RELIEF UNDER THE MEDICARE ACT AND ADMINISTRATIVE PROCEDURES ACT

1. This case involves the legal question whether the United States Department of Health and Human Services ("HHS") under Secretary Robert F. Kennedy, Jr. ("Secretary" or "Defendant") and via its agency the Centers for Medicare & Medicaid Services ("CMS") can validly enact a retroactive rule—CMS Rule 1739-F, 88 Fed. Reg. 37772 (June 9, 2023) ("CMS Rule 1739-F" or "2023 Retroactive Rule")—to negate more than 30 years of reimbursement policy and legal precedent, to the detriment of hospitals who serve a disproportionate share of indigent acute care patients. Three courts (including the U.S. Supreme Court) have already held that CMS cannot validly change its policy until *after* formal rulemaking. After attempting to change its policy three different times since 2004 without rulemaking, CMS finally engaged in formal rulemaking to change its policy, twice: first, CMS enacted a prospective rule changing its policy for 2014 forward (which is not the subject of this action), and second, CMS purported to enact the 2023 Retroactive Rule, which is at the heart of this action, to cover a thirty-year period that at least three court decisions have already decided must be governed by the previous CMS policy dating back to the 1990's.

2. The 2023 Retroactive Rule dramatically and improperly reduces Medicare reimbursement to hospitals that serve a disproportionate share of poor patients, by counting

inpatient days attributable to Medicaid-eligible patients enrolled in Medicare HMO plans, Medicare Advantage Plus, or Medicare Part C plans (collectively "Part C Days") in the Medicare Part A/SSI Fraction rather than the Medicaid percentage, when determining the Plaintiffs' operating and capital disproportionate share hospital ("DSH") payments.

3. This case is brought by plaintiff provider hospitals (collectively hereafter "Plaintiff Hospitals" or "Providers") for claims arising in fiscal years 2004 and prior. These Providers face a unique procedural injustice: their original appeals, which included a so-called "Dual Eligible Days" issue, were remanded (i.e. discarded) under CMS Ruling 1498-R ("Remanded Appeals") and included the direct predecessor to what is now known as the "Part C Days" issue.

4. Plaintiff Hospitals requested the Provider Reimbursement Review Board ("PRRB" or "Board") to momentarily reinstate the appeals, bifurcate the Dual Eligible Day (now known as "Part C Day") issue, and then remand the issues other than "Dual Eligible Day" issues. The PRRB declined to do so—first on December 20, 2023, and again on reconsideration on April 13, 2026. See **Exhibit A** The Board refused to reinstate the appeal after its CMS Ruling 1498-R remand so that the "Part C Days" issue could be bifurcated and remain on appeal, even though the Board had granted that very relief to other providers and hospital fiscal years presenting the very same facts, *see e.g.*, Case No. 06-0092G re Request for Rule 41.1 Reinstatement and Bifurcation of Group Appeal Regarding DSH Part C days issue (October 16, 2017 letter), where the PRRB stated:

> The Board acknowledges that at the time that the Providers' individual appeals and group appeal were filed (2006 and prior), the issue of whether a Medicaid patient that was "dually eligible" for Medicare was not necessarily subdivided by Medicare Part A or Part C/HMO days. Federal courts later ruled differently on the dual eligibility related to Part A and Part C days therefore necessitating the Board to bifurcate these issues. In this case, the Board finds that the Providers'

individual appeals and group appeal added the dual eligible days issue using a broad issue statement that encompassed both dual eligible Part A days and Part C/HMO days.

Nonetheless, the PRRB denied Plaintiff Hospitals' request for reconsideration and this lawsuit was necessitated.

5.      On February 21, 2024, the Secretary, through Change Request 13294 ("CR 13294"), acknowledged that certain providers were entitled to receive new "no change" Revised Notices of Program Reimbursement ("RNPRs") to set up new appeals to replace appeals that were previously remanded (effectively "cancelled"); this would have provided due process for CMS Rule 1739-F challenges through the Remanded Appeals. Some of the Plaintiff Hospitals received such RNPRs. However, the PRRB, taking the position that RNPRs issued pursuant to Plaintiff Hospitals' Remanded Appeals for 2004 and prior did not cover Part C Days, dismissed the Plaintiff Hospitals' appeals, leaving them with no available avenue to challenge exclusion of the Part C Days in the Medicaid Fraction under CMS Rule 1739-F.[1]  This determination was wrong and denies these Providers their due process rights.

6.      Plaintiff Hospitals' appeals prior to the CMS Ruling 1498-R remand included "Dual Eligible Days" claims, which sought inclusion of all Medicaid-eligible days in the Medicaid Fraction even if the patients were "dually eligible" under Medicare as well. Dual Eligible Days encompass exactly the patient population at the heart of the "Part C Days" dispute:

---

[1] One of the main reasons cited by the PRRB for dismissing such appeals was that the decision on the earlier request for reinstatement and bifurcation had already determined that Dual Eligible days were not included in the pre-remand appeal. That is an incorrect reading of the earlier PRRB denial of the request for reinstatement and bifurcation, which was based on procedure and not substance. It would be impossible to say that the prior appeal did not include Dual Eligible days, because the issue statement in the group appeal request specifically includes the assertion that the DSH adjustments were "understated due to the exclusion from the Medicaid proxy calculation of certain days relating to patients dually eligible for both Medicaid and Medicare."

patients enrolled in Medicare Advantage/Part C plans who are also eligible for Medicaid. These Providers' "Dual Eligible" appeals were initially disposed of under CMS Ruling 1498-R, and now the PRRB has denied Plaintiff Hospitals' request to reinstate and bifurcate the "Eligible Days" issue on appeal to survive the remand and allow the "Eligible Days" issue to proceed to adjudication. This action by the PRRB, combined with the more recent dismissal of any of Plaintiff Hospitals' 2024 RNPR appeals, forecloses any rights of Plaintiff Hospitals to adjudicate the Dual Eligible Days that were previously claimed.[2]

7.      The foreclosure of Plaintiff Hospitals' rights to challenge CMS Rule 1739-F is inconsistent with prior PRRB decisions which acknowledged that the "Part C Days" issue is implicated by the "Dual Eligible Days" issue. The PRRB stated as such numerous times when taking jurisdiction and granting Expedited Judicial Review ("EJR") to other providers similarly situated. The PRRB also expressly acknowledged their jurisdiction of this issue in prior rulings on appeal, *see e.g.*, Case No. 08-2624GC re Dual Eligible Part A and Part C days in Sutter Health 1998 DSH Dual Eligible Days CIRP Group (December 30, 2015 letter), discussed above.

8.      These Plaintiff Hospitals must have a right to challenge the effect of the "Part C Days" policy under the 2023 Retroactive Rule on their claims for fiscal years 2004 and prior. It is a violation of Plaintiff Hospitals' due process rights for the "Dual Eligible Days" issue—which is essentially encompassed in the now-recognized "Part C Days" issue—in the Remanded Appeals not to be properly adjudicated via a challenge to CMS Rule 1739-F.

9.      For hospital providers whose appeals were disposed of via the 1498-R Remand, the decisions of the PRRB as to which providers will or will not be provided rights to challenge

---

[2] Indeed, for Plaintiff Hospitals who received 2024 RNPRs, the 2024 RNPRs they received and appealed to challenge the 2023 Retroactive Rule expressly stated that they were issued "to implement the [PRRB] remand for the SSI Ratio <u>and Dual Eligible Days</u>" (emphasis added).

CMS Rule 1739-F are altogether arbitrary and capricious. Providers exactly similarly situated have been given disparate and opposite treatment.

10.    Furthermore, the administration of these Providers' claims has been unreasonably delayed for almost two decades.

11.    The Plaintiff Hospitals request that this Court require the PRRB to reinstate and bifurcate their appeals as to Dual Eligible (Part C) Days and grant EJR under 42 U.S.C. § 1395oo(f)(1) to challenge CMS Rule 1739-F, or alternatively, recognize that any such remand would be a circular or futile act resulting in more delay, and thus take direct jurisdiction to decide the invalidity of the 2023 Retroactive Rule for these Plaintiff Hospitals.

12.    The Plaintiff Hospitals allege that the 2023 Retroactive Rule, which precludes Part C days from being counted in the Medicaid Fraction for the fiscal years at issue here, was promulgated in violation of the Administrative Procedure Act ("APA") and is therefore invalid. They assert that M+A, HMO or Part C Day patients must be included in the Medicaid Fraction.

**PLAINTIFF HOSPITALS ARE ENTITLED TO DUE PROCESS TO SEEK INCLUSION OF PART C DAYS IN THE MEDICAID FRACTION THAT IS PRECLUDED BY THE THIRTY-YEAR PERIOD COVERED BY THE 2023 RETROACTIVE RULE**

13.    **Plaintiff Hospitals Filed Timely Appeals to Challenge to the 2023 Retroactive Rule, CMS Rule 1739-F**. CR 13294 issued by CMS on February 21, 2024, provided that Plaintiff Hospitals were to receive new "no change" RNPRs to set up new appeals under CMS Rule 1739-F, specifically to replace appeals that had been previously effectively cancelled when CMS remanded the Providers' appeals to the Medicare Agency Contractors ("MAC"). The purpose and intent of CR 13294 was to ensure that all providers whose prior appeals had been disposed of via remands would have due process—e.g., receive an opportunity to contest the 2023 Retroactive Rule.

14.    The Plaintiff Hospitals in this action received RNPRs and timely appealed from those RNPRs. However, the PRRB dismissed the Plaintiff Hospitals from the group appeals in Case No. 07-0420G, finding that the RNPRs did not cover the retroactive "Part C Days" issue created by CMS Rule 1739-F because they were issued pursuant to CMS Ruling 1498-R3. The Board's position is legally and factually incorrect for many reasons, including those set forth herein.

15.    **Plaintiff Hospitals are Entitled to Due Process to Adjudicate the "Dual Eligible Days" Issue, Now Known as Part C Days, Originally Raised in the Remanded Appeals.** The Plaintiff Hospitals' Remanded Appeals covered the issue now known as the "Part C Days" issue, because the appeals prior to CMS Ruling 1498-R remand expressly included essentially the same issue under a different name—the "Dual Eligible Days" issue. The "Dual Eligible Days" issue sought the inclusion of all Medicaid-eligible patient days in the Medicaid Fraction, even if those patients were "dually eligible" for Medicare as well as Medicaid.

16.    When these Providers filed their original appeals seeking inclusion of Dual Eligible Days in the Medicaid Fraction, they were asserting the very same right that is now described as the "Part C Days" entitlement. The fact that the issue has since been refined and relabeled does not diminish the substantive identity between the "Dual Eligible Days" appeals and the "Part C Days" challenge.

17.    The PRRB's finding that the "Dual Eligible Days" issue "can only be read to encompass the dual eligible Part A days issue" and "does not meet the specificity requirements… to have appealed the dual eligible Part C days issue" is erroneous, disingenuous, arbitrary and capricious as conflicting with prior PRRB rulings, and elevates form over substance in a manner that denies Providers the reimbursement review to which they are legally entitled.

9

18.    **The Disposition of the "Dual Eligible Days" Issue in the Remanded Appeals Under CMS Ruling 1498-R Constitutes a Due Process Violation.** The Plaintiff Hospitals' Dual Eligible Days appeals were initially disposed of under the CMS Ruling 1498-R remand process—a process that CMS Ruling 1498-R2 itself acknowledged "does not establish policy regarding the treatment of Medicare Part C days in the Medicare DSH methodology." The Providers were told, in effect, that their appeals would be resolved through the process under the CMS Ruling 1498-R. Yet, those appeals have been effectively closed after remand. It is a fundamental violation of due process for the Secretary to now take the position that the "Dual Eligible Days" issue—which is substantively part of the "Part C Days" issue—does not encompass a right to challenge the 2023 Retroactive Rule, which adversely impacted the Providers' DSH reimbursement for those same fiscal years.

19.    Due process requires that Providers be given a meaningful opportunity to contest agency determinations that adversely affect their reimbursement. *See Mathews v. Eldridge,* 424 U.S. 319 (1976). Where, as here, the Secretary has declined to allow Plaintiff Hospitals' "Dual Eligible Day" appeals to survive remand, and thereby denied Providers their right to contest an adverse 2023 Retroactive Rule, the Secretary has violated their constitutional right to due process.

20.    For the reasons set forth herein, this Court should either (a) require the PRRB to reinstate the dismissed Providers' pre-remand appeals and grant EJR, recognizing that the "Part C Days" issue implicated by the 2023 Retroactive Rule necessary compasses the "Dual Eligible Days" issues raised in Plaintiff Hospitals' pre-remand appeals, and that due process requires these Providers to have a forum to challenge CMS Rule 1739-F's impact on their claims; or (b) take direct jurisdiction to adjudicate the invalidity of CMS Rule 1739-F because remand to the

PRRB would be a futile act or at the very least circular, resulting in more unnecessary delay in requiring the Providers to obtain EJR before returning to this Court to decide their CMS Rule 1739-F issue.

### The Presumption Against Retroactivity
### and the Medicare Statute's Retroactivity Provision

21.    Retroactive rulemaking is disfavored in the law. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 245 (1994); *Republic of Austria v. Altmann,* 541 U.S. 677, 696 (2004).

22.    In 1988, the Supreme Court addressed retroactive rulemaking in the Medicare context, holding in *Bowen* that the agency could not exercise its rulemaking authority to issue regulations limiting Medicare reimbursement retroactively. 488 U.S. at 215. In a concurring opinion, Justice Scalia opined that permitting "curative" retroactive rulemaking "would 'make a mockery . . . of the APA,' since 'agencies would be free to violate the rulemaking requirements of the APA with impunity if, upon invalidation of a rule, they were free to "reissue" that rule on a retroactive basis.'" *Id.* at 225 (alteration in original) (citation omitted).

23.    As is relevant here, in 2003, Congress enacted 42 U.S.C. § 1395hh(e)(1), which prohibits the agency from retroactively effectuating rules or policies adopting new substantive standards "unless the Secretary determines that" one of two very narrow exceptions are met, namely, when "such retroactive application is **necessary to comply with statutory requirements,**" id. § 1395hh(e)(1)(A)(i), or where the "**failure to apply the change retroactively would be contrary to the public interest,**" id. § 1395hh(e)(1)(A)(ii). Neither is applicable here.

## JURISDICTION AND VENUE

24.      This action arises under the Medicare Act, Title XVII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, and the APA, 5 U.S.C. § 551 *et seq*.

25.      Jurisdiction is proper under 42 U.S.C. § 1395oo(f)(l) and under the Court's inherent jurisdiction to compel agency action unlawfully withheld or unreasonably delayed under 5 U.S.C. § 706(1), and to grant mandamus relief under 28 U.S.C. § 1361.

26.      Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(l).

## PARTIES

27.      The Plaintiff Hospitals in this action and hospital fiscal years at issue are as shown on the attached **Exhibit B**, which is incorporated by reference as though set forth in full.

28.      The Defendant is Robert F. Kennedy, Jr., in his official capacity as Secretary of the United States Department of Health and Human Services, the federal agency that administers the Medicare program. References to the Secretary herein are meant to refer to him, to his subordinates, and to his official predecessors or successors, as the context requires.

29.      CMS is the component of the Secretary's agency which is responsible for day-to-day operation and administration of the Medicare program. References to CMS herein are meant to refer to the agency and its predecessors, including the Health Care Financing Administration.

## LEGAL AND REGULATORY BACKGROUND

### Medicare DSH Payment

30.      Part A of the Medicare Act covers "inpatient hospital services." 42 U.S.C. § 1395d(a)(1). Since 1983, the Medicare program has paid most hospitals for the operating costs of inpatient hospital services under the prospective payment system ("PPS"). 42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412. Under PPS, Medicare pays predetermined, standardized

amounts per discharge, subject to certain payment adjustments. *Id.* One of the PPS payment adjustments is the DSH payment. *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.

31.     A hospital that serves a disproportionate share of low-income patients is entitled to an upward percentage adjustment to the standard PPS rates per discharge. *See* 42 U.S.C. § 1395ww(d)(5)(F); *see also* 42 C.F.R. § 412.106. The disproportionate patient percentage is defined as the sum of two fractions expressed as percentages. 42 U.S.C. § 1395ww(d)(5)(F)(vi).

32.     The first fraction is commonly known as the "Medicaid Fraction." The statute defines the Medicaid Fraction as: [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under [the Medicaid statute], but who were *not entitled to benefits under part A* of [the Medicare statute], and the denominator of which is the total number of the hospital's patient days for such period." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).

33.     The other fraction is the "Medicare Part A/SSI Fraction" or "SSI Fraction." The statute defines this fraction as: [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were *entitled to benefits under part A* of [the Medicare statute] and were entitled to supplemental security income benefits . . . and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled to benefits under part A* of [the Medicare statute.]" 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphases added).

34.    A hospital may appeal a MAC's determination as to the total amount of Medicare program reimbursement due to the hospital for the fiscal year covered by a cost report to the PRRB. *See* 42 U.S.C. § 1395oo(a)(1)(A); 42 C.F.R. §§ 405.1835–405.1877.

### Medicare Part C and the Dual Eligible Days Issue

35.    Section 4001 of the Balanced Budget Act of 1997, Pub. Law No. 105-33, added a new Part C to the Medicare statute to establish the Medicare+Choice (also known as "M+C") program and is now called Medicare Advantage. A Medicare beneficiary can elect to receive Medicare benefits through enrollment in a Medicare Advantage plan under Medicare Part C. 42 U.S.C. § 1395w-21(a)(1).

36.    Prior to 2004, CMS did not include Part C days in the Medicare Part A/SSI Fraction. *Northeast Hosp. Corp. v. Sebelius,* 657 F.3d 1, 17 (D.C. Cir. 2011) ("*Northeast Hosp.*"). For these years, however, hospitals raised the closely related "Dual Eligible Days" issue in their DSH appeals. The "Dual Eligible Days" issue sought to count in the numerator of the Medicaid Fraction those patient days for Medicaid-eligible patients paid by Medicare HMOs, which for 2004 and prior were not being counted in any part of the DSH fraction. Medicare HMO days became known as Part C Days.

37.    In 2003, the Secretary acknowledged its policy that Part C Days would be included in the Medicaid Fraction, stating that "once a beneficiary elects Medicare Part C, those patient days attributable to the beneficiary should not be included in the Medicare fraction of the DSH patient percentage" but, rather, "[t]hese patient days should be included in the count of total patient days in the Medicaid fraction (the denominator), and the patient's days for the M+C beneficiary who is also eligible for Medicaid would be included in the numerator of the Medicaid fraction." 68 Fed. Reg. 27154, 27208 (May 19, 2003) (emphasis added). This policy

14

was entirely consistent with the "Dual Eligible Days" appeals that Providers had been filing for years.

38.    In 2004, however, the Secretary reversed course in a federal fiscal year 2005 IPPS rule with "Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2005 Rates". 69 Fed. Reg. 48916, 49099 (Aug. 11, 2004) ("2004 Informal Rule"). Three courts—including the U.S. Supreme Court—have since held this change to be invalid. *See Northeast Hosp.*, 657 F.3d 1; *Allina Health Servs. v. Sebelius,* 746 F.3d 1102 (D.C. Cir. 2014) ("*Allina I*"); *Azar v. Allina Health Servs.,* 587 U.S. 566 (2019) ("*Allina II*").

### CMS Ruling 1498-R and the Disposition of Dual Eligible Days Appeals

39.    CMS Ruling 1498-R, issued April 28, 2010, concerned the implementation of *Baystate Med. Ctr. v. Leavitt,* 545 F. Supp. 2d 20 (D.D.C. 2008), with a remand of all then-pending appeals for 2004 and prior to undergo a revised data matching process for SSI fractions. Provider appeals were remanded to the MACs to more accurately capture individuals "entitled to SSI" and to reopen and recalculate DSH payments for affected cost reporting periods.

40.    It is apparent, as the Board has acknowledged, that appeals effectively cancelled by the remand process following CMS Ruling 1498-R included "Dual Eligible Days" issues through which Providers sought to have their Medicaid Fraction revised to include HMO days (now called Medicare Part C Days) attributable to Medicare patients who are also eligible for Medicaid. Defendant did not convey at any point in this process that Plaintiff Hospitals' "Dual Eligible Days" issue had been forfeited or that they would have no right to challenge the "Part C Days" issue in the future.

41.    When CMS later published Ruling 1498-R2, modifying Ruling 1498-R by allowing hospitals to elect whether to use SSI fractions calculated on the basis of "total days" or

"covered days" for cost reports involving patient discharges prior to October 1, 2004, CMS expressly stated that "CMS Ruling 1498-R does not establish policy regarding the treatment of Medicare Part C days in the Medicare DSH methodology." This acknowledgment confirms that the CMS Ruling 1498-R remand process should have left the "Part C Days" issue unresolved for Plaintiff Hospitals.

### CR 13294 and the Right to CMS Rule 1739-F Appeals

42.     On February 1, 2024, CMS published instructions to Medicare contractors to implement the 2023 Retroactive Rule. *See* Change Request (CR) to Implement the Medicare Program Final Action: Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage, CMS Manual System, Pub. 100-20, Transmittal 12513, CR 13294 (Feb. 1, 2024).

43.     CR 13294 provided that those Plaintiff Hospitals whose prior appeals had been previously dismissed via remands were entitled to receive new "no change" RNPRs to set up new appeals under CMS Rule 1739-F, replacing their previously dismissed appeals. CR 13294 thus recognized that the disposition of prior appeals through alternative processes such as CMS Ruling 1498-R did not extinguish a provider's right to challenge the 2023 Retroactive Rule.

### Litigation History: *Northeast Hosp.*, *Allina I*, *Allina II*, and *Allina III*

44.     The agency's change to the DSH payment calculation, first adopted in 2004, has given rise to substantial litigation. In *Northeast Hosp.,* 657 F.3d at 17, the Court of Appeals found that the agency's retroactive application of a rule Defendant has implemented here, but for periods prior to October 1, 2004, was impermissible. The Court held that "the Secretary's present interpretation, which marks a substantive departure from his prior practice of excluding [Part C] days from the Medicare fraction, may not be retroactively applied" to the fiscal years at issue. *Id.*

at 17. Importantly, *Northeast Hosp.* specifically addressed the period 2004 and prior—the exact fiscal years at issue in this case. CMS acquiesced in *Northeast Hosp.* in June 2012 through Transmittal 1755 (CR 7492), directing contractors to include Part C/dual eligible days in the Medicaid Fraction for discharges through September 30, 2004 for all providers with open appeals. CMS Technical Direction Letter ("TDL")-12391 then limited the application of CR 7492 to providers with "active appeals or litigation," effectively restricting the binding judicial decision to a narrow set of providers.

45.    In *Allina I,* the Court of Appeals vacated the 2004 Informal Rule, finding it was not the logical outgrowth of prior policy. 746 F.3d at 1109. In *Allina II,* the U.S. Supreme Court held that the agency's attempted readoption of the 2004 policy violated the notice-and-comment requirements of the Medicare Act. 587 U.S. 566 (2019). In *Allina III,*[3] the court confirmed that the statute unambiguously requires that Part C days be counted in one fraction or the other— meaning that for provider years 2004 and prior, Part C days must be part of the Medicaid Fraction which was CMS's stated policy as determined by *Northeast Hosp*. These decisions collectively establish that the pre-2004 policy of excluding Part C days from the Medicare Fraction and including Part C days in the Medicaid Fraction must apply to fiscal years 2004 and prior.

46.    Defendant has indicated in several rulings and to federal courts that DSH reimbursement for these types of claims would be made in accordance with *Northeast Hosp*. The Secretary gave such commitment in order to obtain voluntary remand of *Allina III* and the *Allina*

---

[3] *Allina Health Sys. v. Burwell*, No. 1:16-cv-150 (D.D.C. Jan. 29, 2016).

17

*II* Type Cases,[4] stating that the Secretary would be handing the Plaintiffs the "victory" they were seeking with regard to the inclusion of Part C Days in the numerator of the Medicaid Fraction.

47.    Nonetheless in August 2020, Defendant issued its proposed Rule 1739-P, 85 Fed. Reg. 47723 (Aug. 6, 2020), and CMS Rule 1739-R (August 17, 2020), which effectively instructed the MACs not to finalize DSH adjustments involving Part C Days until the proposed retroactive rule could be formalized, and it contemplated the rule for nearly three more years until it issued CMS Rule 1739-F, even though Defendant knew the rule was contrary to the holdings in *Northeast Hosp., Allina I* and *Allina II*, as well as the Defendant's commitments to the courts to obtain voluntary remand in *Allina-Type II* cases and *Allina III*.

48.    Nearly 19 years after it originally promulgated the 2004 Informal Rule that was vacated in *Allina I,* and nine years since its still-intact remand decision in *Allina I,* the Defendant issued the 2023 Retroactive Rule purporting to re-adopt, retroactively, the change from the still-vacated 2004 Informal Rule. The law demands an end to these two decades-long litigations, which has really made quite a mockery of two prior U.S. Supreme Court cases.

## FACTS SPECIFIC TO THIS CASE AND THE PROCEDURAL POSTURE

49.    The Plaintiff Hospitals in this action are providers for fiscal years 2004 and prior who filed "Dual Eligible Days" appeals seeking inclusion of Medicare Part C/Medicaid dual eligible patient days in the Medicaid Fraction of the DSH calculation. The "Dual Eligible Days" issue was the previous nomenclature for the "Part C Days" issue now at the center of the CMS Rule 1739-F litigation.

50.    On November 6, 2006, the PRRB received the group appeal request in Case No. 07-0420G (Blumberg-Ribner 2000/2002 Dual Eligibles 2nd Group). The complete issue

---

[4] *In re Allina II-Type DSH Adjustment Cases*, No. 1:19-mc-190 (D.D.C. Nov. 15, 2019).

statement read: "[DSH] Adjustment – The Provider contend that their respective DSH adjustments are understated due to the exclusion from the Medicaid proxy calculation of certain days relating to patients dually eligible for both Medicaid and Medicare. Further, the Providers assert that the HCFA Administrator's decision pertaining to said days in *Edgewater Medical Center v. Blue Cross and Blue Shield of Illinois* (June 19, 2000) is inconsistent with applicable Medicare Regulations."

51. By letter dated April 30, 2014, the Board identified Case No. 07-0420G as subject to remand under CMS Ruling 1498-R and, because it needed first to make a jurisdictional determination, requested that the Group Representative submit a Schedule of Providers and associated jurisdictional documents. The Board received that documentation on August 11, 2014.

52. On December 2, 2015, the Board issued a jurisdictional determination, remanded the remaining participants based on CMS Ruling 1498-R, and closed the appeal.

53. On May 16, 2016, the Board received the Group Representative's letter requesting Rule 41.1 reinstatement and bifurcation of the group appeal regarding the DSH "Part C Days" issue, explaining that the references to dual eligible patient days were intended to refer to persons eligible for Part A and Part C.

54. On December 20, 2023, the Board declined to exercise its discretion to reopen and reinstate Case No. 07-0420G and denied the request for reinstatement and rescission of remand in order to bifurcate the "Part C Days" issue from the group appeal.

55. On February 12, 2024, the Group Representative timely sought reconsideration of the December 20, 2023 decision, arguing, among other things, that the Board's premise that the "instant appeal did not include Part C Days" was "incorrect, contradictory to prior decisions of the Board expressly stating that identical appeals did include Part C Days," and that denying

reinstatement and bifurcation here while granting it in "nearly identical circumstances is arbitrary and capricious."

56.    On April 13, 2026, a divided Board denied reconsideration.

57.    Before denying reinstatement and bifurcation here, the Board had decided, as to other providers and hospital fiscal years presenting the same facts, that their "Dual Eligible Days" appeals included the "Part C Days" issue at the time those appeals were filed—before the CMS Ruling 1498-R remand—and on that basis granted reinstatement and bifurcation of the "Part C Days" issue. Those matters include (but are not limited to) Case No. 20-1976G (bifurcated from Case No. 03-0419G), Case No. 17-2284G (bifurcated from Case No. 06-0092G), and Case No. 07-1463. As the Board recognized, "Part C Days were necessarily part of the appeal, but were not appropriate to have been identified as such at the time." The Board's contrary disposition of Case No. 07-0420G, on materially identical facts, is inconsistent, arbitrary, capricious, and an abuse of discretion.

58.    The Board's refusal to reinstate and bifurcate leaves the Plaintiff Hospitals in Case No. 07-0420G with no administrative forum in which to adjudicate the inclusion of their Medicaid-eligible Part C Days in the Medicaid Fraction, even though the "Dual Eligible Days" issue they timely raised in 2006 encompassed those very days. The refusal denies these Providers due process and constitutes agency action unlawfully withheld and unreasonably delayed.

59.    Had the Plaintiff Hospitals' "Dual Eligible Days" appeals been reinstated and bifurcated, they would have been remanded pursuant to CMS Rule 1739-R.  Then, after the Retroactive Rule became final, pursuant to CMS Rule 1739-F and CR 13294, these Providers would have received RNPRs to resurrect the issues on appeal in the Remanded Appeals.

20

Instead, the PRRB has denied such reinstatement and bifurcation, and denied reconsideration of same.

60.    The PRRB's decision leaves the Plaintiff Hospitals in a Kafkaesque situation: their prior appeals were closed through the CMS Ruling 1498-R process; the PRRB now says those closed appeals did not preserve the "Part C Days" issue; CR 13294 purports to give Providers new opportunities to contest CMS Rule 1739-F but the PRRB's decision means that at least some of the Plaintiff Hospitals will not receive a new RNPR, and for those who did, the PRRB says the CMS Ruling 1498-R RNPRs do not constitute RNPRs under CMS Rule 1739-F; and no new "no change" 1739-F RNPRs have been issued by the MACs to replace the dismissed appeals as contemplated by CR 13294.

61.    Absent relief, Plaintiff Hospitals here would thus effectively be barred from any administrative forum to contest the 2023 Retroactive Rule, which dramatically reduces their appropriate DSH reimbursement for fiscal years 2004 and prior.

62.    Additionally, the administration of these Providers' claims has been unreasonably and unlawfully delayed. Since at least the issuance of the *Northeast Hosp.* decision in 2011 and CMS's acquiescence to that decision in 2012, these Providers have been waiting for proper resolution of their "Dual Eligible/Part C Days" claims. More than two decades of delay—through the 2004 Informal Rule, the *Northeast Hosp.* and *Allina* litigation, the closed PRRB appeals via CMS Ruling 1498-R remands, the DSH "Hold," the 2023 Retroactive Rule, and now the dismissal of their appeals—has deprived the Plaintiff Hospitals of tens of millions of dollars in reimbursement to which they are legally entitled.

63.    By the filing of this Complaint, the Plaintiff Hospitals seek judicial review and relief under 42 U.S.C. § 1395oo(f)(1) and the APA.

**ASSIGNMENT OF ERRORS**

64.     The Medicare statute provides for judicial review of the questions presented here "pursuant to the applicable provisions under chapter 7 of title 5," *i.e.*, the APA. 42 U.S.C. § 1395oo(f)(l).

65.     The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]" 5 U.S.C. § 706(2). Under this standard, the 2023 Retroactive Rule is invalid, and the PRRB's dismissal of the Plaintiff Hospitals was erroneous and should be set aside.

**Count I: The 2023 Retroactive Rule Should Be Set Aside as
Contrary to Law and Required Procedure, and In Excess of Statutory Authority**

66.     The Plaintiff Hospitals repeat the allegations in all prior paragraphs of this Complaint as if fully set forth herein.

67.     The exclusion of Part C days from the numerator of the Medicaid Fraction for any patients discharged prior to October 1, 2004, contradicts the Court of Appeals' decision in *Northeast Hosp.,* which found that the agency could not retroactively apply the 2004 policy change to periods prior to the October 1, 2004 effective date of that rule. 657 F.3d at 16–17. Thus, *Northeast Hosp.* specifically protects the fiscal years at issue in this case—2004 and prior. The agency's attempt to apply this policy again through the 2023 Retroactive Rule runs directly afoul of *Northeast Hosp.* and CMS's own acquiescence thereto in TDL-12391.

68.     The final action also violates the language and intent of 42 U.S.C. § 1395hh(e). Neither of the narrow exceptions permitting "retroactivity of substantive changes" applies. The

22

first narrow "required by statute" exception cannot be met here because the Court of Appeals has expressly adopted Defendant's prior position that the DSH statute is ambiguous, and the statute does not require any specific treatment of Part C days in the DSH calculation. *See Northeast Hosp.,* 657 F.3d at 11; *Allina I,* 746 F.3d at 1106.

69.    The second limited exception is not met here because the 2023 Retroactive Rule cannot be said to be in public interest. Among other reasons, it offends fundamental notions of justice, disregards the significant public interest in advance notice-and-comment rulemaking, and results in thousands of safety-net hospitals losing billions of dollars in funding that has been illegally withheld for years. *See Bowen,* 488 U.S. at 225 (Scalia, J., concurring).

70.    Inclusion of Medicare Part C patient days in the Medicare Fraction Denominator was held to be impermissible for fiscal years prior to 2004 in *Northeast Hosp.,* 657 F.3d 1, and for fiscal years prior to 2014 in *Allina I* and *Allina II,* all of which held that the prior policy and practice of the Secretary—which was NOT to include Medicare Part C days in the denominator of the Medicare Part A/SSI Fraction—could not be changed before proper rulemaking and the rule's effective date. For fiscal years 2004 and prior, *Northeast Hosp.* provides an independent and absolute bar to application of the 2023 Retroactive Rule.

71.    The 2023 Retroactive Rule also violates *Allina II* and is procedurally invalid under 42 U.S.C. §§ 1395hh(a)(2) and (a)(4), which bar the agency from effectuating or applying the same policy change from the rule vacated in *Allina I* as a logical outgrowth failure, 746 F.3d at 1105, at least until after the effective date of a legally sound notice-and-comment process adopting the rule prospectively only, *see Allina II,* 587 U.S. at 581–84.

72.     CMS has indicated in several rulings and to at least three Federal Courts that DSH reimbursement was going to be made in accordance with *Northeast Hosp.,* 657 F.3d 1. CMS is estopped to change course now and deny such payments for fiscal years 2004 and prior.

73.     Under *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369 (2024), Courts assess *de novo* whether an agency's rule is consistent with the underlying statute. The Plaintiff Hospitals challenge the requirement of including M+A, HMO or Part C Days in the Medicare Part A/SSI Fraction, as doing so deviates from the statutory meaning, purpose, and intent.

### Count II: The PRRB's Dismissal Was Erroneous and Must Be Reversed; Due Process Requires Plaintiff Hospitals Have a Forum to Challenge CMS Rule 1739-F

74.     The Plaintiff Hospitals repeat the allegations in all prior paragraphs of this Complaint as if fully set forth herein.

75.     The PRRB's dismissal of the Plaintiff Hospitals was erroneous for the reasons set forth above. The CMS Ruling 1498-R RNPRs issued to Plaintiff Hospitals cover the issue now known as Part C Days, because the underlying appeals expressly raised the "Dual Eligible Days" issue—the direct predecessor and substantive equivalent of the "Part C Days" issue.

76.     Moreover, CR 13294 required that providers whose prior appeals were disposed of through processes other than a direct CMS Rule 1739-F challenge receive new "no change" RNPRs. Either (a) the CMS Ruling 1498-R RNPRs constituted such instruments (in which case the Plaintiff Hospitals had a right to appeal under CMS Rule 1739-F and the PRRB erred in dismissing them), or (b) the required "no change" RNPRs were not issued within 12 months of CR 13294 (February 21, 2024), in which case, under 42 C.F.R. § 405.1835(b), Plaintiff Hospitals had a right to appeal to the PRRB as though the proper RNPRs had been issued. One way or the other, these Providers have a legal right to challenge the 2023 Retroactive Rule.

77.     The PRRB's dismissal denies the Plaintiff Hospitals due process under the Fifth Amendment of the Constitution. *See Mathews v. Eldridge,* 424 U.S. 319 (1976). These Providers have a protected property interest in proper DSH reimbursement, which was part of prior appeals that were cancelled via the CMS Ruling 1498-R remand. The Secretary's 2023 Retroactive Rule dramatically reduces appropriate reimbursement. Due process requires a meaningful opportunity to be heard. The PRRB's dismissal, combined with the failure to issue new 1739-F RNPRs under CR 13294, denies these Providers any meaningful forum to contest the 2023 Retroactive Rule.

78.     The Court should therefore either: (a) order the PRRB to reinstate the Plaintiff Hospitals' appeals and grant EJR, recognizing that the validity of the Part C Days policy under CMS Rule 1739-F is a question of law that the Board is without authority to decide; or (b) recognize that such remand would be a circular and futile act given the Board's clear and settled position, and thus take direct jurisdiction to decide the CMS Rule 1739-F issue for these Plaintiff Hospitals, as contemplated by the EJR provisions of 42 U.S.C. § 1395oo(f)(1) and the doctrine of futility. *See Baylor All Saints Med. Ctr. v. Becerra,* 4:24-cv-00432-P (N.D. Tex. Aug. 15, 2024) (finding jurisdiction where exhaustion of PRRB remedies would be futile).

**Count III: The Final Rule Should Be Set Aside as Arbitrary and Capricious**

79.     The Plaintiff Hospitals repeat the allegations in all prior paragraphs of this Complaint as if fully set forth herein.

80.     In addition to being inconsistent with law and exceeding the agency's statutory authority, the final action is both arbitrary and capricious as well as unreasonable. The agency has still not acknowledged that the policy readopted in the 2023 Retroactive Rule departed from the preexisting rule and practice regarding the treatment of Part C days in the DSH payment and

has not offered any good reason for that change. *See FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 515 (2009).

81.     For fiscal years 2004 and prior, the 2023 Retroactive Rule is particularly arbitrary and capricious because CMS had previously acquiesced to *Northeast Hosp.* by settling hundreds of cases addressing the "Part C Days" issue for those cost years and directing contractors to exclude Part C days from the denominator of the Medicare fraction. The 2023 Retroactive Rule now reverses that acquiescence without adequate explanation, treating similarly situated providers dissimilarly. *See Transactive Corp. v. United States,* 91 F.3d 232, 239 (D.C. Cir. 1996).

82.     The 2023 Retroactive Rule is also arbitrary and capricious because the agency changed its pre-2004 position without properly considering reliance interests of the Plaintiff Hospitals and other similarly situated providers. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 591 U.S. 1, 33 (2020).

83.     In addition, the 2023 Retroactive Rule is arbitrary and capricious for failing any test of reasoned decision making, especially because so much time has passed and because other hospitals' claims have been paid on the basis of Part C Days being calculated in the numerator of the Medicaid Fraction instead of the denominator of the Medicare Part A/SSI Fraction.

**Count IV: Unreasonable Delay in Processing Revised Payment Determinations**

84.     The Plaintiff Hospitals repeat the allegations in all prior paragraphs of this Complaint as if fully set forth herein.

85.     The APA "requires that an agency 'proceed to conclude a matter presented to it' and that it do so 'within a reasonable time.'" *In re Int'l Chem. Workers Union,* 958 F.2d 1144, 1149 (D.C. Cir. 1992) (quoting 5 U.S.C. § 555(b)). The APA further requires a reviewing court

26

to "'compel agency action unlawfully withheld or unreasonably delayed.'" *Id.* (quoting 5 U.S.C. § 706(1)). Accordingly, courts "designated by statute to review agency actions may play an important role in compelling agency action that has been improperly withheld or unreasonably delayed." *Telecomms. Rsch. & Action Ctr. v. FCC,* 750 F.2d 70, 77 (D.C. Cir. 1984) ("TRAC").

86.    This Court is authorized by statute to review final decisions of Defendant as to the amount of Medicare program reimbursement due to providers of services, like the Plaintiff Hospitals at issue in this action. *See* 42 U.S.C. § 1395oo(f)(1). The Court has jurisdiction over this action and the power to grant relief in the nature of mandamus to compel Defendant to perform a mandatory obligation that has been unlawfully withheld and unreasonably delayed. *See In re Medicare Reimbursement Litigation,* 414 F.3d 7, 13 (D.C. Cir. 2005).

87.    This Court also has jurisdiction to grant the relief requested where, as here, "(1) the plaintiff[s] ha[ve] a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff[s]." *In re Medicare Reimbursement Litig.,* 414 F.3d at 10 (quoting *Power v. Barnhart,* 292 F.3d 781, 784 (D.C. Cir. 2002)).

88.    The administration of the Plaintiff Hospitals' DSH claims for fiscal years 2004 and prior has been unreasonably delayed for over a decade. Following issuance of *Northeast Hosp.* in 2011 and CMS's acquiescence that that decision in 2012, the agency has repeatedly delayed proper payment. The CMS Ruling 1498-R remand process was applied but did not fully resolve the "Dual Eligible/Part C Days" claims. The issuance of CMS Rule 1739-F in June 2023, purporting to retroactively change decades of established policy, has further delayed resolution. The subsequent PRRB dismissal has left these Providers in administrative limbo with no forum to seek relief.

89.    Generally, 42 C.F.R. § 405.1803(a) provides that "the contractor must within a reasonable period of time (as specified in § 405.1835(c)(1)) furnish the provider . . . a written notice reflecting the contractor's final determination of the total amount of reimbursement due the provider." Section 405.1835(c)(1) further provides that a reasonable period of time is 12 months. The agency has failed to provide proper payment determinations for these Providers for periods spanning more than a decade.

90.    The so-called "TRAC factors" also support the relief requested here. *See Am. Hosp. Ass'n v. Burwell,* 812 F.3d 183, 189 (D.C. Cir. 2016). With respect to the "most important factor" of time, *In re Core Commc'ns, Inc.,* 531 F.3d 849, 855 (D.C. Cir. 2008), the length of delay here—over a decade from acquiescing to *Northeast Hosp.*—is far from reasonable. "[H]ealth and welfare are indisputably at stake" because "hospitals with 'money tied up in the appeals process" have a difficult time maintaining facilities and procuring supplies." *Am. Hosp. Ass'n v. Azar,* No. CV 14-851 (JEB), 2018 WL 5723141, at *3 (D.D.C. Nov. 1, 2018).

91.    The Plaintiff Hospitals have suffered substantial harm as a result of these unreasonable delays. These are hospitals that serve a disproportionate share of indigent patients, which is why they are entitled to additional reimbursement from the Medicare system. Such hospitals cannot afford to have hundreds of thousands—or millions—of dollars withheld from their tight budgets for more than a decade. Health and welfare are indisputably at stake.

92.    The Plaintiff Hospitals have no other avenue of relief available to cause the agency to perform its obligations in a reasonable timeframe other than to file this Complaint.

93.    To the extent the agency takes the position that the PRRB's dismissal and the absence of a 1739-F RNPR prevents relief here, that position is arbitrary, capricious, and otherwise contrary to law. The PRRB has made clear that it lacks jurisdiction over these

28

Providers. Requiring the Plaintiff Hospitals to seek relief from the PRRB when the PRRB has definitively said it cannot hear the case would be a futile act. The Court has jurisdiction to act now.

94.    CMS has indicated in several rulings and to Federal Courts that DSH reimbursement for these types of claims was going to be made in accordance with *Northeast Hosp.* CMS is estopped from changing course now—particularly as to fiscal years 2004 and prior that are specifically covered by *Northeast Hosp.*—and the continued delay and denial of proper reimbursement constitutes arbitrary and capricious agency action.

95.    CMS's payment of DSH reimbursement has been unreasonably delayed and should have been made long ago. DSH reimbursement for Plaintiff Hospitals' years in these appeals should be made in accordance with policies existing prior to 2004 and including payment of attorney fees and interest for all the years of delay, as provided in 42 U.S.C. § 1395oo(f)(2).

**Count V: Mandamus and Relief to Set Aside the PRRB's Denial of Reinstatement and Bifurcation of the Dual Eligible Days/Part C Days Appeal (Case No. 07-0420G)**

96.    The Plaintiff Hospitals repeat the allegations in all prior paragraphs of this Complaint as if fully set forth herein.

97.    The PRRB's December 20, 2023 refusal to temporarily reinstate Case No. 07-0420G after its CMS Ruling 1498-R remand so that the "Part C Days" issue could be bifurcated, and its April 13, 2026 denial of reconsideration, were arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, 5 U.S.C. § 706(2)(A).

98.    The Board granted reinstatement and bifurcation to other providers and hospital fiscal years on materially identical facts—including in Case Nos. 20-1976G, 17-2284G, and 07-1463—while denying the same relief here.

29

99.    The "Dual Eligible Days" issue that the Plaintiff Hospitals raised in their 2006 group appeal encompassed the Medicaid-eligible Part C Days now at issue, as the Board itself has acknowledged in the cited appeals. The Board's elevation of form over substance—faulting the Providers for not separately labeling the "Part C Days" issue before any litigation or CMS issuance had distinguished it from the "Dual Eligible Days" issue—cannot justify treating these Providers differently from similarly situated providers.

100.    This Court has jurisdiction to grant relief in the nature of mandamus to compel the Board to perform a duty owed to the Plaintiff Hospitals where "(1) the plaintiff[s] ha[ve] a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff[s]." *In re Medicare Reimbursement Litig.*, 414 F.3d at 10. The Plaintiff Hospitals have a clear right to consistent, non-arbitrary treatment of their appeal; the Board has a clear duty to apply its own rules and precedent evenhandedly; and, because the Board has closed the appeal and refused reinstatement, the Plaintiff Hospitals have no other adequate administrative remedy.

101.    The Court should therefore issue a writ of mandamus and/or an order setting aside the Board's December 20, 2023 and April 13, 2026 decisions in Case No. 07-0420G; directing the Board to reinstate the group appeal, rescind the CMS Ruling 1498-R remand, and bifurcate the "Dual Eligible Days/Part C Days" issue for adjudication; or, in the alternative, taking direct jurisdiction to adjudicate the inclusion of the Plaintiff Hospitals' Medicaid-eligible Part C Days in the Medicaid Fraction.

**REQUEST FOR RELIEF**

102.    The Plaintiff Hospitals request an Order:

(a).    declaring invalid and setting aside the agency's final action published in the Federal Register on June 9, 2023 (88 Fed. Reg. 37772) as applied to fiscal years 2004 and prior;

(b).    declaring invalid and setting aside the final payment determinations reflecting the policy of including Part C days in the Medicare Part A/SSI Fraction and excluding Medicaid-eligible Part C patient days from the numerator of the Medicaid Fraction used to calculate the Plaintiff Hospitals' Medicare DSH calculation for fiscal years 2004 and prior;

(c).    declaring invalid and setting aside the Medicare Part A/SSI Fractions issued by the agency and applied in the final payment determinations at issue here;

(d).    directing the agency to recalculate the Plaintiff Hospitals' DSH payments by applying the pre-2004 policy and practice excluding Part C days from the SSI Fraction and including Medicaid-eligible Part C patient days in the numerator of the Medicaid Fraction and to make prompt payment of any additional amounts due to the Plaintiff Hospitals, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

(e).    in the alternative, requiring the PRRB to

    i.    reinstate the Plaintiff Hospitals' appeals,

    ii.    accept jurisdiction, and

      iii.     grant Expedited Judicial Review on the ground that the validity of the "Part C Days" policy under CMS Rule 1739-F is a question of law the Board is without authority to decide; OR

(f).     in the alternative, requiring the agency to cause the issuance of new "no change" RNPRs for any Plaintiff Hospital that has not received a proper 1739-F RNPR, and recognizing the right of those Plaintiff Hospitals to appeal therefrom under 42 C.F.R. § 405.1835(b);

(g).     finding that the payments to Plaintiff Hospitals have been unreasonably delayed, and as appropriate under the Court's Orders requested herein, requiring the agency to cause complete such proceedings or payments without further unreasonable delay;

(h).     issuing a writ of mandamus and/or an order directing the PRRB to vacate its December 20, 2023 decision and its April 13, 2026 decision denying reconsideration in Case No. 07-0420G, to reinstate the group appeal, to rescind the CMS Ruling 1498-R remand, and to bifurcate and adjudicate the "Dual Eligible Days/Part C Days" issue;

(i).     in the alternative, directing the agency to include the Plaintiff Hospitals' Medicaid-eligible Part C Days in the numerator of the Medicaid Fraction and to recalculate their DSH payments accordingly for the fiscal years at issue in Case No. 07-0420G;

(j).     requiring the agency to pay interest on the unpaid amounts at the legal rate from the dates first due until paid;

32

(k).    requiring the agency to pay legal fees and costs of suit incurred by the Plaintiff

Hospitals; and

(l).    providing such other relief as the Court may consider appropriate.


Dated: June 11, 2026

By:    */s/Roya Vasseghi*
  Roya Vasseghi (DC Bar No. 1014058)
  Toby Latham (D.D.C. Bar No. VA185)
  roya@vasseghilaw.com
  toby@vasseghilaw.com
  **VASSEGHI LAW GROUP**
  9663-D Main Street
  Fairfax, Virginia 22031
  Telephone: (703) 215-9358
  Facsimile: (703) 563-7401

  *Attorneys for Plaintiffs*

  Ellen K. Wolf (CA Bar No. 110686)
  Christopher J. Cummiskey (SBN 244249)
  ewolf@wolfwallenstein.com
  ccummiskey@wolfwallenstein.com
  **WOLF WALLENSTEIN, PC**
  11400 West Olympic Boulevard, Suite 700
  Los Angeles, California 90064
  Telephone: (310) 622-1000
  Facsimile: (310) 457-9087

  *Pro Hac Vice Admission Pending*